Maria SOLANO, Victor Ortiz, Juan Sosa a/k/a/ Roberto Ortiz, Jr., Sammy Ortiz, Richard Ortiz, and Elva Ortiz, as next friend and mother of Laura Ortiz and Lisa Ortiz, Plaintiffs–Appellants,

v.

Willard GOFF, individually and as Sheriff of Baca County, Defendant–Appellee.

No. 97CA2107.

Colorado Court of Appeals, Div. V.

Feb. 4, 1999.

Certiorari Denied June 21, 1999.

Jones & Waters, L.L.C., Michael R. Waters, Colorado Springs, Colorado; Stanley A. Brinkley, Lamar, Colorado, for Plaintiffs–Appellants.

Hall & Evans, L.L.C., David R. Brougham, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge TAUBMAN.

In this wrongful death action, plaintiffs, the surviving heirs of Roberto Ortiz, appeal the summary judgment in favor of defendant, Williard Goff, the sheriff of Baca County, finding that defendant owed no legal duty to Ortiz. We affirm.

This action arises from the murder of Ortiz, a county resident, by an inmate at the Baca County Jail. On the day of the murder, the inmate participated on a work crew supervised by defendant that picked up trash outside of the jail. While on the work crew, the inmate consumed a large quantity of vodka which Ortiz had provided to him and other inmates.

Shortly thereafter, defendant transported the inmates back to the jail for lunch. Defendant retired to his apartment, which was located in the jail building, and the inmates proceeded to make their own lunches. During this period, the inmate walked out of the jail and eventually went to Ortiz's home, where he killed him.

Plaintiffs brought suit seeking damages from defendant on the theory that he had negligently supervised the inmate. Defendant answered the complaint and subsequently moved for summary judgment asserting that he owed no legal duty to Ortiz. The trial court granted defendant's motion and this appeal followed.

We note that neither in the trial court nor on appeal has defendant raised any issue of jurisdiction under the Colorado Government Immunity Act, § 24–10–101, et seq., C.R.S. 1998. Further, plaintiffs alleged compliance with the notice provisions of that Act contained in § 24–10–109, C.R.S.1998.

Plaintiffs contend that the trial court erred in finding that no duty existed. We disagree.

Whether a defendant owes a legal duty to a plaintiff is a question of law. *Taco Bell, Inc. v. Lannon*, 744 P.2d 43 (Colo.1987).

■ In general, no duty is imposed upon a person to take action for the protection of another even if it is reasonably apparent that such action is necessary to protect the other person from injury or peril. *See* Restatement (Second) of Torts § 314 (1965). However, in some limited circumstances, such a duty has been found to exist.

■ In determining whether a defendant owes a legal duty to prevent a third person from harming another, the following factors are generally considered: (1) the existence of a special relationship between the parties; (2) the foreseeability of harm to others; (3) the social utility of the defendant's conduct; (4) the magnitude of the burden of guarding against injury or harm; and (5) the practical consequences of placing a duty upon the defendant. *See Davenport v. Community Corrections of Pikes Peak Region, Inc.*, 962 P.2d 963 (Colo.1998).

■ The existence of a special relationship between the defendant and a third party wrongdoer or between the defendant and the potential victim of the wrongdoer weighs in favor of finding a duty of care. *See Perreira v. State*, 768 P.2d 1198 (Colo.1989); Restatement (Second) of Torts § 315 (1965).

Whether such a relationship is present depends largely on the ability of the defendant to control the conduct of the third person. *See* Restatement (Second) of Torts §§ 316 through 319 (1965); *Perreira v. State, supra*.

Here, it could be argued that such a relationship did exist between the sheriff and the inmate. However, even if we were to assume this to be the case, our consideration of the other factors leads us to reject the existence of the asserted duty of care. *Perreira v. State, supra*.

■ The second factor to be considered is the foreseeability of the particular harm inflicted. Foreseeability is based on common sense perceptions of the risks created by various conditions and circumstances. *See Taco Bell, Inc. v. Lannon, supra*. While it is an important factor, foreseeability by itself does not establish the existence of a legal duty. *See Perreira v. State, supra*.

Generally, the mere fact that a person was incarcerated has not been found sufficient to establish that any injury or damage caused by an escaped prisoner was foreseeable. *See Robinson v. Estate of Williams*, 721 F.Supp. 806 (S.D.Miss.1989) (sheriff not liable for injuries or deaths caused by an escaped prisoner); *Vann v. Department of Corrections*, 662 So.2d 339 (Fla.1995) (because there is no common law duty to protect a particular individual from potential harm, but only a general duty to protect the public, the department was not liable for the criminal acts of an escaped prisoner); *Collie v. Hutson*, 175 Ga.App. 672, 334 S.E.2d 13 (1985) (where sheriff and deputies had no reason to expect that any of the prisoners they transported to dentist's office would attempt to escape, they were not liable for fatal shooting caused by escaped prisoner).

However, some courts have held that if the prisoner had a history of escape or has known violent tendencies, the harm is fore-

seeable under such circumstances. *Cf. Geiger v. State*, 242 So.2d 606 (La.App.1970) (where plaintiff alleged that institution had a history of escape, inmates had long criminal record, and one of inmates had escaped from institution on two previous occasions, the latest only one week prior to the incident that was the subject of the lawsuit, claim for negligence was sufficiently pled); *see generally*, D. Vaccaro, Annotation, *Liability of Public Officer or Body for Harm done by Prisoner Permitted to Escape*, 44 A.L.R.3d 899 (1972).

█ Plaintiffs assert that because the inmate had been transferred to county jail from community corrections as a result of his possession of drugs on several occasions, his use of alcohol, and an unauthorized absence, defendant should have been aware that the inmate posed a risk. In addition, plaintiffs assert that it was foreseeable that the inmate, who was serving time for second degree burglary, would have burglarized another home and would have potentially injured or killed anyone there.

We note that plaintiffs do not assert that any negligence by defendant in allowing the inmate to escape, without more, made the murder of Ortiz foreseeable. Rather, plaintiffs' contention concerning foreseeability is based on the combination of factors noted above.

The trial court found that it was undisputed that the inmate had not committed any type of violent crime prior to the incident that is the subject of this action. In addition, the court noted, and the record confirms, that the inmate had participated on work crews both inside and outside of the Baca County Jail approximately 60 times without incident. Further, defendant noted in his deposition that, during the 20 years he had supervised work crews, there had never been an escape.

Nothing in the record indicated that defendant was aware that the inmate posed a danger to others, including Ortiz. *See Davenport v. Community Corrections of Pikes Peak Region, Inc., supra.*

Not only was the murder of Ortiz not foreseeable, the other factors relevant to the determination of a legal duty – the social utility of defendant's conduct, the magnitude of the burden of guarding against injury or harm, and the practical consequences of placing a duty upon defendant – all militate against imposition of a duty of care here.

Defendant was statutorily empowered to keep prisoners. *See* § 17–26–101, C.R.S. 1998. He performed this service as a public servant for the benefit of society. One of the obvious benefits of defendant's actions was to prevent convicted criminals from committing additional crimes. An inherent risk was that some prisoners, including those who have been imprisoned for non-violent crimes, would have characteristics that would make prediction of their tendency to commit violent acts extremely difficult. Short of keeping prisoners in a locked-down status, defendant could not guarantee that some prisoners would not commit a violent act given the opportunity. Accordingly, some risk to the public is a consequence of balancing society's needs against the practical realities of operating a penal system.

Further, imposing liability on defendant for the conduct of the prisoners who have not demonstrated violent tendencies in the past would result in his being an insurer for their actions. This would have a negative impact on any programs, such as work crews, which may benefit the public as well as the inmate. Moreover, we note that the General Assembly, by authorizing sheriffs to form work crews, has implicitly endorsed the social utility of such crews. *See* §§ 17–26–107(2) & 17–26–114, C.R.S.1998.

In summary, based upon our consideration of all the relevant factors, we conclude that imposition of a legal duty on defendant under the circumstances presented here would be inappropriate. Therefore, the trial court properly found that no legal duty existed and properly dismissed the complaint. *See Davenport v. Community Corrections of Pikes Peak Region, Inc., supra.*

The judgment is affirmed.

Judge MARQUEZ and Judge BRIGGS concur.