Brian E. ROHRBOUGH, Susan A. Petrone, individually and as personal representative of the estate of Daniel Rohrbough, deceased, Donald F. Fleming, individually and as personal representative of the estate of Kelly Fleming, deceased, Diedra A. Fleming, Joseph R. Kechter, individually and as personal representative of the estate of Matthew Joseph Kechter, deceased, Ann Marie Kechter, Dawn L. Anna, individually and as personal representative of the estate of Lauren D. Townsend, deceased, Albert B. Velasquez, individually and as personal representative of the estate of Kyle A. Velasquez, deceased, Phyllis E. Velasquez, and Bradly S. Bernall and Misty R. Bernall, Individually, and as Co-personal representatives of the estate of Cassie R. Bernall, deceased, Plaintiffs,

v.

John P. STONE, the Sheriff of Jefferson County, Colorado, Individually and in his Official Capacity, Jefferson County Sheriff's Department a/k/a Jefferson County Sheriff's Office, John Dunaway, Individually, Terry Manwaring, Individually, David Walcher, Individually, Philip Hy, Individually, John Kiekbusch, Individually, Neil Gardner, Individually, Paul Magor, Individually, Paul Smoker, Individually, Scott Taborsky, Individually, Rick Searle, Individually, Kevin Walker, Individually, John Does Numbers 1–100, individually, the Board of County Commissioners of the County of Jefferson, Colorado, Wayne N. Harris, Katherine Ann Harris, Thomas E. Klebold, Susan Klebold, Phillip J. Duran, Robyn Anderson, and Ronald Frank Hartmann, Defendants.

No. CIV.00–B–808.

United States District Court, D. Colorado.

Nov. 27, 2001.

James Parker Rouse, Sr., Rose & Associates, PC, Englewood, CO, Barry Kevin Arrigton, Arrington & Associates, PC, Golden, CO, for Plaintiffs.

J. Andrew Nathan, Andrew J. Fisher, Bernard Roland Woessner, Nathan, Bremer, Dumm & Myers, PC, Denver, CO, William A. Tuthill, III, Lily Wallman Oeffler, Golden, CO, Alan Kaminsky, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Defendants John P. Stone, the Sheriff of Jefferson County, Colorado, Individually and in His Official Capacity, Jefferson County Sheriff's Department a/k/a Jefferson County Sheriff's Office, (Sheriff's Department), John Dunaway, Individually,

Terry Manwaring, Individually, David Walcher, Individually, Philip Hy, Individually, John Kiekbusch, Individually, Neil Gardner, Individually, Paul Magor, Individually, Paul Smoker, Individually, Scott Taborsky, Individually, Rick Searle, Individually, and Kevin Walker, Individually, (collectively, the responding Sheriff Defendants), and the Board of County Commissioners of the County of Jefferson, Colorado (Board), move, pursuant to Fed. R.Civ.P. 12(b)(6), to dismiss all claims brought by Plaintiffs Brian E. Rohrbough, Susan A. Petrone, Individually and as Personal Representative of the Estate of Daniel Rohrbough, Deceased, Donald F. Fleming, Individually and as Personal Representative of the Estate of Kelly Fleming, Deceased, Diedra A. Fleming, Joseph R. Kechter, Individually and as Personal Representative of the Estate of Matthew Joseph Kechter, Deceased, Ann Marie Kechter, Dawn L. Anna, Individually and as Personal Representative of the Estate of Lauren D. Townsend, Deceased, Albert B. Velasquez, Individually and as Personal Representative of the Estate of Kyle A. Velasquez, Deceased, Phyllis E. Velasquez, and Bradly S. Bernall and Misty R. Bernall, Individually, and as Co-personal representatives of the estate of Cassie R. Bernall, deceased.

After consideration of the motion, briefs, arguments of counsel, and for the following reasons, I grant the motion.

## I.

### Facts

#### A. General Allegations

The following facts are alleged in Plaintiffs' Second Amended Complaint. (Complaint). Defendants Sheriff Stone, Officers Dunaway, Manwaring, Walcher, and Hy are named as the "Command Personnel." C/O ¶ 26. The Command Personnel and Defendant Deputy Sheriffs Gardner, Magor, Smoker, Taborsky, Searle, Walker, and John Does Numbers 1–100 are designated the "Law Enforcement Defendants." C/O ¶ 28.

On April 20, 1999, Kelly Fleming, Matthew Kechter, Lauren Townsend, Kyle Velasquez, and Misty Bernall were shot and killed by fellow students Eric Harris and Dylan Klebold in Columbine High School's library (Library). *See* C/O ¶¶ 36, 39–40. The following events led up to these shootings.

On the morning of April 20, 1999, Harris and Klebold attacked Columbine using sawed-off shotguns, semi-automatic weapons, and bombs. C/O ¶ 52. When the attack began, Harris and Klebold exchanged shots outside of the school with Defendant Deputy Sheriffs Gardner, Magor, Smoker, Taborsky, Searle and/or Walker. *Id.* at ¶ 53. Kelly Fleming, Matthew Kechter, Lauren Townsend, Kyle Velasquez, and Misty Bernall (Library victims) were in the Library when the attack began. C/O ¶ 58. After exchanging shots with these Defendants, Harris and Klebold shot at Daniel Rohrbough and others outside of the school and then entered the school building. *Id.* at ¶ 54.

The Law Enforcement Defendants were in contact with the Sheriff's Department, Sheriff Stone, and other deputy sheriffs and employees immediately upon "discovering the killers." C/O ¶ 55. The Sheriff's Department began receiving emergency telephone messages from others at the school which were routed through its communications center. *Id.* In response, the Sheriff's Department cleared radio channels so that Sheriff Stone and others in command, could communicate with the deputies at and en route to the school and monitor the 911 telephone calls being received. *Id.* The Sheriff's Department also put out a call to neighboring jurisdictions for "mutual aid." *Id.*

Plaintiffs allege that Defendants Gardner, Magor, Smoker, Taborsky, Searle, Walker, and other Law Enforcement Defendants, acting in accordance with the policies and procedures of Sheriff Stone and/or the Sheriff's Department and orders from "some or all of the Command Defendants" failed and refused to pursue Harris and Klebold into the school. *See* C/O ¶ 56.

Allegedly, at some point between the time the killers entered the school but before they entered the Library, some or all of the Command Personnel Defendants and other Law Enforcement Defendants "decided to limit the response of law enforcement personnel at the school to 'securing the perimeter.'" *See* C/O ¶ 64. Consistent with this decision, some or all of the "Command Personnel" issued orders that any law enforcement officers who might have previously entered the school without authorization were to leave the school. *Id.* The Command Personnel also ordered other law enforcement officers, poised to enter the school, to remain outside. *Id.*

In the meantime, Patti Nielson, a teacher in the Library, made a 911 call to the Sheriff's Department. Plaintiffs allege that Ms. Nielson was on the phone to a 911 operator who was in direct contact with the Law Enforcement Defendants. *See* C/O ¶ 59. According to the Complaint, despite knowing that Ms. Nielson was injured, the 911 operator insisted that she stay on the line. *Id.* The 911 operator told Ms. Nielson to "keep the kids low to the floor and calm." *Id.* Ms. Nielson relayed these instructions to the students in the Library, including the Library Victims. *Id.* Plaintiffs allege that approximately 2½ minutes into the call, the 911 operator informed Ms. Nielson that police were on the scene and that there was "help on the way" and to keep the students low to the floor. *Id.* The 911 operator gave these

instructions despite having been told by Ms. Nielson that the fire alarm was going off and the room was filling with smoke. *Id.* Allegedly, the 911 operator was "acting upon orders and instructions from some or all of the Law Enforcement Defendants and was acting in accordance with the polices and procedures of Sheriff Stone and/or the Sheriff's Department." *Id.*

Approximately 5 minutes into the 911 call, Harris and Klebold entered the Library and began shooting students. *See* C/O ¶ 62. This information was relayed by the 911 operator to the Law Enforcement Defendants. *Id.* Several minutes after first entering the Library, either Harris or Klebold went to the Library windows and shot out several of the windows. The Law Enforcement Defendants made no response. C/O ¶ 65. Harris and Klebold then resumed their attack on the students in the Library. It was at this time that Harris and Klebold shot and killed the Library Victims. *Id.* at ¶ 68.

After Harris and Klebold left the Library, those students able to walk left the Library through the exterior entrance to the outside. C/O ¶ 68. The Law Enforcement Defendants never came to the aid of the persons in the Library. C/O ¶ 69.

Plaintiffs allege that as a result of the 911 operator's instructions, relayed to them by Ms. Nielson, the Library Victims did not escape through readily available exits before Harris and Klebold entered the Library. C/O ¶ 61. As a result, the Library Victims lost their window of opportunity to avoid Harris and Klebold. *Id.*

According to Plaintiffs, before the shooting began in the Library, the students and teachers inside the Library could have escaped safely to the outside. *See* C/O ¶¶ 60. Allegedly, at least one faculty member yelled, "Get out of the library." *Id.* This unidentified faculty member and some students left the Library through the main

entry door on the east side of the Library and were not shot. *Id.* There was "ample time to safely evacuate the students from the Library, or for the students to safely evacuate themselves, before Harris and Klebold entered the Library." C/O ¶ 50. It is alleged further that the Law Enforcement Defendants could see that the Library's exterior entrance was open and knew that the students could "safely escape" from the library through this entrance, "probably in less than one minute." *Id.*

According to the Complaint, even though the Law Enforcement Defendants knew that the people in the Library had been told to remain in the Library on the floor and that help was on the way, the Command Personnel and Law Enforcement Defendants maintained the "secure perimeter" and did not allow rescuers into the school. C/O ¶ 64. It is alleged that the Law Enforcement Defendants' decisions and orders were given with the "approval, authorization, and/or knowing acquiescence of Sheriff Stone." *Id.* Plaintiffs also allege that "[a]ll of the acts and omissions complained of were undertaken by the Law Enforcement Defendants under ... the regulations, policies, customs, and procedures of Sheriff Stone and/or the Sheriff's Department." *Id.* at ¶ 77.

**B. Allegations as to Daniel Rohrbough**

Daniel Rohrbough was shot and killed outside the school. Based on the following allegations, Plaintiffs contend that "one of the Law Enforcement Defendants fired the bullet that killed Daniel Rohrbough." *See* C/O ¶ 75.

After exchanging shots with the Law Enforcement Defendants, Harris and Klebold shot at Daniel Rohrbough and others outside of the school. *See* C/O ¶ 54. The following events then occurred:

C/O ¶ 71 A police officer who arrived on the scene in the west parking lot of Columbine High School ... reported seeing a teenage male in a green T-shirt fleeing down the hill to the west of the school. The teenage male went down at the same location where Daniel Rohrbough's body was found. The Defendant Sheriff's Department admits that there were armed law enforcement personnel on scene at the school by this time. The officer returned to the west side of the school later in the afternoon on April 20, 1999 and recognized the victim as being Daniel Rohrbough. The police officer met with Mr. Rohrbough and Mrs. Petrone, [Daniel Rohrbough's parents], and confirmed to them that Daniel Rohrbough had been shot at the spot where he saw Daniel Rohrbough fall. ...

C/O ¶ 72 A teacher inside the school reported looking out a window in time to see Daniel Rohrbough, one of her students, get shot while running from the stairs down the hill. ... Later in the afternoon of April 20, 1999 this teacher went by Daniel Rohrbough's body while escaping from the school and the body was at the same spot where she saw Daniel Rohrbough get shot. Official reports of the Sheriff's Department indicate that the two gunmen were firing at Daniel Rohrbough from the top of the hill outside the west entrance to the building and that there were only the two gunmen, [Harris and Klebold], involved in the attack.

C/O ¶ 73 One large caliber bullet struck Daniel Rohrbough in the left leg and was fired from above by one of the gunmen on the hill. Daniel Rohrbough also suffered two large caliber bullet wounds from bullets entering from the front of his body.

A copper-jacketed 9mm bullet was recovered from Daniel Rohrbough's liver. The fatal bullet was fired from the front and had an upward trajectory. Therefor (*sic*), the fatal bullet could not have come from the gunmen on the hill above and behind him. The fatal bullet struck Daniel Rohrbough in the left chest and exited from the right rear shoulder area.

C/O ¶ 74. Mr. Rohrbough and Mrs. Petrone were told by Sheriff's Department Investigators Kate Battan and Randy West that the fatal bullet was not recovered from the crime scene. There were no marks from the bullet on the side walk where Daniel Rohrbough fell as would have been expected if the fatal bullet had been fired by one of the gunmen while Daniel Rohrbough was lying on the ground. Had Daniel Rohrbough been fatally shot while lying on the sidewalk, the bullet fragments or marks on the sidewalk from the bullet passing through his body would have been clearly visible on the sidewalk. The Defendant Sheriff's Department has willfully and intentionally concealed Daniel Rohrbough's clothing from his parents thereby depriving them of critical forensic evidence. At the time that he was shot and killed by one of the Law Enforcement Defendants, Daniel Rohrbough was an unarmed civilian fleeing for his life and posed no threat ... to law enforcement personnel or other persons.

C/O ¶ 76. But for the policies and procedures of Sheriff Stone and/or the Sheriff's Department and the conduct of Defendants, Daniel Rohr-bough ... would not have been killed.

*See* C/O, *passim.*

Allegedly, "the acts and omissions complained of were undertaken by the Law Enforcement Defendants under ... the regulations, policies, customs, and procedures of Sheriff Stone and/or the Sheriff's Department." *Id.* at ¶ 77.

Plaintiffs' Complaint also includes allegations concerning the investigation of Harris' and Klebold's activities before April 20, 1999. *See* C/O ¶¶ 41–51, 87. In response to the Law Enforcement Defendants' arguments concerning this investigation, Plaintiffs stated in their Response Brief:

The Plaintiffs have put in the [Second Amended Complaint] allegations concerning the activities of Eric Harris and Dylan Klebold leading up to April 20, 1999 for the purpose of providing a more complete background on the horrible incident, *but that is not what the Section 1983 claims and the willful-and-wanton claims are based upon.* Response Brief, p. 3. (emphasis added).

. . . . .

Thus, the arguments of the Sheriff Defendants [based on the conduct of the "Investigating Sheriffs"] are misplaced and irrelevant.

Response Brief, p. 41. Consequently, for purposes of this Rule 12(b)(6) motion, I disregard the allegations contained in ¶¶ 41–51 and 82 of the Second Amended Complaint.

## II.

## Claims

Plaintiffs bring the following claims based on the foregoing allegations:

### Claim One

Wrongful Death Occasioned by Willful and Wanton Misconduct

### Claim Two

42 U.S.C. § 1983 Deprivation of Constitutional Right to Life and Liberty—All Personal Representative Plaintiffs against the Law Enforcement Defendants, in their individual capacities

### Claim Three

42 U.S.C. § 1983—Failure to Remedy Subordinates'/Colleagues' Deprivation of Constitutional Rights against Law Enforcement Defendants in their individual capacity

### Claim Four

42 U.S.C. § 1983—Unconstitutional Policies and Failure to Properly Train against Defendant Stone, in his Official Capacity, Defendant Sheriff's Department, and Defendant Board

All Defendants move, pursuant to Fed. R.Civ.P. 12(b)(6), to dismiss the federal claims for failure to state claims upon which relief can be granted. Further, the individual Law Enforcement Defendants, accepting as true Plaintiffs' well pleaded facts, assert entitlement to qualified immunity from suit as to Claims Two and Three. The Law Enforcement Defendants also seek dismissal of Claim One for wrongful death based on willful and wanton conduct as barred by the Colorado Governmental Immunity Act, § 24–10–101, *et seq.*

### III.

### Fed.R.Civ.P. 12(b)(6)

Under Rule 12(b)(6), I may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). If the plaintiff has pleaded facts that would support a legally cognizable claim for relief, a motion to dismiss should be denied. *Id.* "I accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party." *See Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1304 (10th Cir.1998). All reasonable inferences must be construed in the plaintiff's favor. *See Dill v. City of Edmond,* 155 F.3d 1193, 1201 (10th Cir.1998). *Id.* A plaintiff's conclusory allegations need not be accepted as true. *Southern Disposal, Inc. v. Texas Waste Mgmt.,* 161 F.3d 1259, 1262 (10th Cir.1998).

### IV.

### Claims

### A. Claim One—Wrongful Death Occasioned by Willful and Wanton Misconduct

All Plaintiffs except the Bernalls join in Claim One, C/O ¶ 78, against the Law Enforcement Defendants in their individual capacity. *See* C/O ¶¶ 80, 83–84, 86–88, 90.

The Law Enforcement Defendants move to dismiss Claim One: 1) because it is barred by the Colorado Governmental Immunity Act (CGIA), Colo.Rev.Stat. § 24–10–103(4)(a); and 2) pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### 1. Colorado Governmental Immunity Act

### a. CGIA § 24–10–110(5)–Specificity

As an initial matter, the Law Enforcement Defendants contend that because Plaintiffs do not allege a specific factual basis for Claim One, namely, the identity of the individual Law Enforcement Defendants who committed the alleged action-

able conduct, as required by CGIA, § 24–10–110(5), this claim must be dismissed pursuant to Rule 12(b)(6).

Pursuant to § 24–10–110(5), adequate allegations are measured as follows:

> (a) In any action in which allegations are made that an act or omission of a public employee was willful and wanton, *the specific factual basis of such allegations shall be stated in the complaint.* (b) *Failure to plead the factual basis of an allegation* that an act or omission of a public employee was willful and wanton *shall result in dismissal of the claim* for failure to state a claim upon which relief can be granted.

*Id.* (emphasis added).

■ When there are disputed issues of fact, a well-pleaded claim asserting that an employee acted willfully and wantonly must await determination at trial on the merits. *City of Lakewood v. Brace,* 919 P.2d 231 (Colo.1996); *Barham v. Scalia,* 928 P.2d 1381 (Colo.App.1996); *Patel v. Thomas,* 793 P.2d 632 (Colo.App.1990). Whether a plaintiff has pleaded sufficient facts to state a claim based upon willful and wanton conduct, however, is a threshold determination to be made by the Court. *See Moody v. Ungerer,* 885 P.2d 200 (Colo.1994); *Barham,* 928 P.2d at 1383–85; *Jarvis v. Deyoe,* 892 P.2d 398 (Colo.App.1994).

#### i. Library Victims

Plaintiffs allege that the 911 operator "was acting upon orders and instructions from some or all of the Law Enforcement Defendants...." C/O ¶ 59. Plaintiffs have named Defendants Stone, Dunaway, Manwaring, Hy, Kiekbusch, Walcher, Gardner, Magor, Smoker, Taborsky, Searle, Walker, and Kiekbusch as the Law Enforcement Defendants. *See* C/O ¶ 28. The question is a close one. However, I will assume that by alleging that all of these Defendants ordered and instructed the 911 oper-

ator, Plaintiffs have met the specificity required by the CGIA. *See* § 23–10–110(5).

#### ii. Daniel Rohrbough

■ Plaintiffs allege that "one of the Law Enforcement Defendants fired the bullet that killed Daniel Rohrbough...." C/O ¶ 75. Plaintiffs' Complaint does not identify which of the twelve named Law Enforcement Defendants is alleged to have shot Daniel Rohrbough. Pursuant to Plaintiffs' allegations concerning the circumstances surrounding Daniel Rohrbough's death, as a logical corollary, no more than one Law Enforcement Defendant could be responsible for Daniel Rohrbough's death. Thus, pursuant to § 24–10–110(5)(a)'s heightened pleading requirements, Plaintiffs' failure to name which of the Law Enforcement Defendants is responsible for Daniel Rohrbough's death requires Rule 12(b)(6) dismissal of the Law Enforcement Defendants as to this portion of Claim One. *See* § 24–10–110(5)(b).

#### iii. Training

■ Based on Plaintiffs' allegation that "Defendant Stone, the Sheriff's Department, and the Board failed to properly train the deputies, dispatchers, and 911 operators....," *see* C/O ¶ 126, Plaintiffs have pleaded with specificity the Sheriff Defendant responsible for training these personnel. *See* § 24–10–110(5)(a).

Out of an abundance of caution, I analyze the CGIA to determine if Claim One is barred as to all Law Enforcement Defendants.

#### b. Claim One Analysis

In a companion case, *Schnurr, et al. v. Board of County Commissioners, et al.,* Civil Case No. 00–B–790, I set out the applicable law which I rely on in this case as well. I also construed controlling Colorado court authority to mean that for a

defendant's conduct to be "willful and wanton" under the CGIA that defendant must be adequately alleged to have purposefully pursued a course of action or inaction that he or she considered would probably result in the harm to Plaintiffs. I apply that definition in this case as well.

### i. Library Victims

■ The Law Enforcement Defendants' alleged willful and wanton conduct involves the actions and omissions with respect to the 911 operator's communications and failure to attempt to rescue the Library Victims. Also pertinent are Plaintiffs' allegations that Harris and Klebold exchanged shots with Deputy Gardner, fired at Daniel Rohrbough and others outside the school and then entered the school. C/O ¶¶ 53–54.

Under circumstances where Harris and Klebold were just observed shooting at people outside the library's exterior entrance, the Law Enforcement Defendants' failure to attempt a rescue of the Library Victims through the exterior entrance and, in essence, telling them to stay put, does not, as a matter of law, amount to willful and wanton conduct. In addition, while the Law Enforcement Defendants' decision to "secure the perimeter" and not enter the school might constitute negligence or arguably gross negligence, I conclude that the Law Enforcement Defendants' actions or omissions do not constitute willful and wanton conduct sufficient to abrogate governmental immunity under Colorado law. *See* Colo.Rev.Stat. § 13–21–102(1)(6); *Moody,* 885 P.2d 200; *Pettingell v. Moede,* 129 Colo. 484, 271 P.2d 1038 (1954). Consequently, I conclude Claim One based on the Law Enforcement Defendants' conduct with respect to the Library Victims is barred by the Colorado Governmental Immunity Act.

### ii. Daniel Rohrbough

■ Plaintiffs have not pleaded the identity of the Law Enforcement Defendant alleged to have shot Daniel Rohrbough. Moreover, there is no allegation that anyone saw who shot Daniel Rohrbough. Thus, the circumstances facing this unidentified Law Enforcement Defendant are also unknown. Without more, the general conclusory allegation that the conduct of "the Law Enforcement Defendants" is "willful and wanton," *see* C/O ¶ 95, is insufficient to conclude that the conduct of the unidentified Law Enforcement Defendant was willful and wanton. Thus, the portion of Claim One based on Daniel Rohrbough's death is barred by the Colorado Governmental Immunity Act.

### 2. Fed.R.Civ.P. 12(b)(6) Motion to Dismiss

#### a. Library Victims

In the alternative, the Law Enforcement Defendants move to dismiss Claim One on the grounds that there is no cognizable claim under Colorado law for failure to protect the Library Victims from Harris and Klebold. In response, Plaintiffs contend that the Law Enforcement Defendants owed a duty to the Library Victims to rescue them from Harris' and Klebold's criminal acts. *See* C/O ¶ 87. In Plaintiffs' view, this duty arose from the special relationship that existed between the Law Enforcement Defendants and the Library Victims based on the Law Enforcement Defendants' alleged acts and failures to act which enhanced the danger faced by the Library Plaintiffs. *See id.* I disagree.

In *Schnurr,* I set out the Colorado case law addressing whether police officers owe a duty to crime victims who are injured by third parties. Based on *Leake v. Cain,* 720 P.2d 152 (Colo.1986) and its progeny concerning special relationships, I concluded that the Defendants, including Deputy Gardner in his role as School Resource

Officer, did not have custody or control over the persons in the Library or Harris and Klebold. Thus, no special relationship existed on basis of custody and control. Under the indistinguishable circumstances alleged here, I reach the same conclusion as to the Law Enforcement Defendants.

Plaintiffs allege also that the Law Enforcement Defendants' actions created reasonable reliance on the part of the Library Victims that the police would assist or protect them. For the reasons set out in *Schnurr*, I conclude that the Law Enforcement Defendants' conduct induced the reliance of the Library Victims. Thus, the Law Enforcement Defendants were in a special relationship with the Library Victims. *See Whitcomb v. City and County of Denver*, 731 P.2d 749 (Colo.App.1986). Plaintiffs do not allege there is a statutory duty of care.

### ii. *Solano* Factors

In *Solano v. Goff*, 985 P.2d 53 (Colo.App. 1999), the Court listed factors to be examined to determine the existence of a duty in situations where special relationships exist: 1) the foreseeability of harm to others; 2) the social utility of the defendant's conduct; 3) the magnitude of the burden of guarding against injury or harm; and 4) the practical consequences of placing such a duty upon the police. *Id.* at 54.

▄ The Law Enforcement Defendants concede that there was a foreseeable risk of harm to the Library Victims. *See* Opening Brief, p. 55. Foreseeability alone does not, however, establish the existence of a legal duty. *See Solano*, 985 P.2d at 54. Thus, the other *Solano* factors must be examined to determine if the Law Enforcement Defendants owed the Library Victims a duty.

In *Schnurr*, after examining the remaining *Solano* factors, I concluded that, on balance, the imposition of a legal duty on the Sheriff Defendants was not warranted.

For the same reasons, I reach the same conclusion as to the Law Enforcement Defendants. Thus, the Library Plaintiffs have failed to state a claim pursuant to Rule 12(b)(6).

### b. **Daniel Rohrbough**

The lack of specificity concerning: 1) the identity of the Law Enforcement Defendant who allegedly shot Daniel Rohrbough; and 2) the circumstances confronting this Law Enforcement Defendant mandates Rule 12 dismissal of this portion of Claim One. Even assuming a special relationship, any analysis of the *Solano* factors would be based on pure speculation.

## B. Claim Two -Deprivation of Constitutional Right to Life and Liberty under 42 U.S.C. § 1983—All Personal Representative Plaintiffs against the Law Enforcement Defendants, in their individual capacities

The Law Enforcement Defendants move to dismiss Claim Two based on the danger creation/enhancement doctrine and special relationship doctrine. Plaintiffs assert substantive due process violations based on alleged improper responses to the Columbine attack, including the shooting of Daniel Rohrbough, and these Defendants' lack of rescue efforts as to the Library Victims. For the following reasons, I grant the motion.

### 1. **Library Victims**

The Plaintiffs in *Schnurr* brought Claim One (state created/enhanced danger) and Claim Two (special relationship) based on the same facts and arguments asserted by the Plaintiffs here. For the reasons set out in *Schnurr, et al.*, I conclude that the Plaintiffs have failed to state a claim as to the Library Victims based on either state created/enhanced danger or special relationship. Moreover, like the Plaintiffs in *Schnurr*, in this case, Plaintiffs fail to meet all five *Uhlrig* factors.

### 2. Daniel Rohrbough

#### i. Special Relationship

■ Plaintiffs do not allege that Daniel Rohrbough was in the custody or under the control of the Law Enforcement Defendants. Thus, as a matter law, Plaintiffs fail to state a § 1983 claim based on the special relationship doctrine. *See DeShaney v. Winnebago County Dept. of Social Serv.,* 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); Fed.R.Civ.P. 12(b)(6).

#### ii. State created/enhanced danger

■ Plaintiffs allege that an unidentified Law Enforcement Defendant shot and killed Daniel Rohrbough. This allegation is based on unidentified witness descriptions as to where Daniel Rohrbough was standing when he was shot, the location and angle of the entry wound and the failure to recover the bullet. *See* C/O ¶¶ 71–74. The failure to allege which Law Enforcement Defendant shot Daniel Rohrbough or the circumstances under which he allegedly fired, creates an insurmountable vacuum in the Complaint. Assuming, however, a particular Law Enforcement Defendant were identified, Plaintiffs have failed to state a substantive due process claim.

Plaintiffs allege that before Daniel Rohrbough was killed on April 20, 1999, Harris and Klebold attacked Columbine using sawed-off shotguns, semi-automatic weapons, and bombs. C/O ¶ 52. When the attack began, Harris and Klebold exchanged shots outside of the school with Defendant Deputy Sheriffs Gardner, Magor, Smoker, Taborsky, Searle and/or Walker. *Id.* at ¶ 53. After exchanging shots with these Defendants, Harris and Klebold shot at Daniel Rohrbough and others outside of the school and then entered the school building. *Id.* at ¶ 54. Allegedly, Daniel Rohrbough was shot in the left leg by either Harris or Klebold while they were atop a hill behind Daniel Rohrbough. *Id.* at ¶¶ 72–73.

Under Plaintiffs' allegations, I cannot determine the time that passed between the time Harris and Klebold initiated their attack, shot Daniel Rohrbough in the leg and entered the school building. I infer, however, that the elapsed time was mere minutes. *See* C/O ¶¶ 52–54. These circumstances are directly analogous to the prison riot discussed in *Lewis* during which state officials were forced to make "split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving." *See County of Sacramento v. Lewis,* 523 U.S. 833, 853, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Under such circumstances, unless an intent to harm a victim is alleged, there is no liability under the Fourteenth Amendment redressible by an action under § 1983. *See id.*

In their Complaint, Plaintiffs' do not use the phrase "intent to harm." Rather, Plaintiffs allege that "the Law Enforcement Defendants intentionally and/or with deliberate and/or reckless indifference violated [Daniel Rohrbough's] right to life and liberty...." C/O ¶ 109. Plaintiffs allege further that "[t]he failure of the Law Enforcement Defendants to protect the li[fe] and liberty of ... Daniel Rohrbough ... was done intentionally and/or with a deliberate and/or reckless disregard for [his] life and liberty...." Pursuant to Fed. R.Civ.P. 8, these allegations are the equivalent of pleading an "intent to harm."

However, under the totality of the circumstances facing the Law Enforcement Defendants on the morning of April 20, 1999, pursuant to *Lewis* and its progeny Claim Two may not be maintained against the Law Enforcement Defendants as to the death of Daniel Rohrbough. As set out in *Schnurr, et al.,* Plaintiffs must meet all five *Uhlrig* factors. *See Uhlrig v. Harder,* 64 F.3d 567 (10th Cir.1995). Un-

der the circumstances alleged here, Plaintiffs have met the first four factors. They fall short, however, as to the fifth element.

The Law Enforcement Defendants were faced with an unprecedented violent situation on April 20, 1999. The Law Enforcement Defendants' actions in the first moments of the attack came under shocking, violent, and "rapidly evolving" circumstances leaving no opportunity for "unhurried judgments," "repeated reflection," or the "luxury of a second chance." *See Lewis* at 848, 852–53, 118 S.Ct. 1708;.

From the outset, the danger confronting the persons outside of the school was extreme. These Defendants, including the unidentified Law Enforcement Defendant, were required to make multiple, simultaneous decisions in a critically short period of time with no opportunity to "reflect" or "truly deliberate." *See Radecki,* 146 F.3d at 1232. Consequently, the alleged actions of the unidentified Law Enforcement Defendant fails to shock the conscience of this Court in the constitutional substantive due process sense. *See Lewis,* 523 U.S. at 852–53, 118 S.Ct. 1708; *Radecki v. Barela,* 146 F.3d 1227 (10th Cir.1998), *cert. denied,* 525 U.S. 1103, 119 S.Ct. 869, 142 L.Ed.2d 771 (1999). Thus, Plaintiffs have not met the fifth *Uhlrig* element.

To state a danger creation claim, Plaintiffs must meet all five *Uhlrig* elements. *See Uhlrig,* 64 F.3d at 574–75. Because Plaintiffs' allegations do not satisfy all five *Uhlrig* factors, Claim Two must be dismissed as to the death of Daniel Rohrbough.

## C. Claim Three—Failure to Remedy Subordinates'/Colleagues' Deprivation of Constitutional Rights against Law Enforcement Defendants in their individual capacity

### 1. Supervisory Liability

 The proper test for holding a supervisor liable for the unconstitutional conduct of subordinates under section 1983 requires allegations of personal direction or actual knowledge and acquiescence in conduct alleged to have violated the constitutional rights of a citizen. *Woodward v. City of Worland,* 977 F.2d 1392, 1400 (10th Cir.1992) *cert. denied,* 509 U.S. 923, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993). *See also Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (supervisory liability requires an "affirmative link [between the supervisor and the subordinate] . . . showing [the supervisor's] authorization or approval of such misconduct"); *McClelland v. Facteau,* 610 F.2d 693, 696 (10th Cir.1979) (same).

Plaintiffs allege that on April 20, 1999 the Law Enforcement Defendants, including the Command Personnel:

> observed and witnessed their colleagues' and subordinates' directives cutting off all avenues of aid, both self-help and aid from other would-be rescuers, to the Library victims and the deprivation of Danny Rohrbough's constitutional rights, yet failed to take any action to remedy or correct said deprivations of Constitutional rights taking place before them.

*See* C/O ¶ 118. Thus, as to the Command Personnel, Plaintiffs meet the first *Woodward* element.

Based on the analysis of Claim Two, Plaintiffs have not made an initial showing of an underlying constitutional violation on the part of the Law Enforcement Defendants. Thus, Plaintiffs have not met the essential elements of a supervisory liability claim. *See Woodward,* 977 F.2d at 1400. Claim Three must be dismissed.

### 2. Individual Liability

 "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the

constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). *See also Reid v. Wren,* 57 F.3d 1081, 1995 WL 339401 *2 (10th Cir.1995) *quoting Anderson,* 17 F.3d at 557. Thus, an officer who is present but fails to intervene to prevent another law enforcement official from infringing a person's constitutional rights is liable if the "officer had reason to know ... that any constitutional violation has been committed by a law enforcement official[ ] and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir.1994) (emphasis omitted); *see also Anderson,* 17 F.3d at 557.

The shortcomings in Plaintiffs' supervisory claim also undermine the portion of Claim Three based on the allegations that the Law Enforcement Defendants are liable for failing to remedy their colleagues' unconstitutional acts. Because there is no underlying constitutional violation, Claim Three is subject to dismissal.

**D. Claim Four—42 U.S.C. § 1983—Unconstitutional Policies and Failure to Properly Train against Defendant Stone, in his Official Capacity, Defendant Sheriff's Department, and Defendant Board**

Plaintiffs allege that the Municipal Defendants are liable under § 1983 for the acts of Sheriff Stone in his official capacity as final policymaker in law enforcement matters for the Board and the Sheriff's Department for improperly: 1) "train[ing] their deputies to respond to an active shooter situation where innocent people are being killed as if it were a hostage situation;" 2) "set[ting] up a perimeter, thereby cutting off would be rescuers;" and 3) "telling people in danger to stay where they were pending rescue by Sheriff's deputies even though there are readily available escape routs (*sic* ) . . . ." Response Brief, p. 33. *See* C/O ¶ 132. Plaintiffs allege further that the Sheriff's Department "failed to properly train deputies to differentiate between armed criminals and unarmed civilians when engaged in gun fights with armed criminals." *Id.*

In *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that:

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 695, 98 S.Ct. 2018. Liability does not attach to the governmental entity pursuant to § 1983 for the acts of its employees unless the Plaintiff can show: 1) that a municipal employee committed a constitutional violation; and 2) a municipal policy or custom was the moving force behind the constitutional deprivation. *Myers v. Oklahoma County Bd. of County Comm'rs,* 151 F.3d 1313, 1317 (10th Cir.1998). The policy need not be formal or written. *Id.* at 691, 98 S.Ct. 2018. *See also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

**1. Constitutional Violation**

Plaintiffs have not made the requisite predicate showing of an underlying constitutional violation as to Claims One and Two. Assuming, however, constitutional violations as to Claims One and Two, I assess the second *Myers* element.

### 2. Policies, Procedures, Custom, or Training as Moving Force

 A governmental entity or its policy makers may be liable pursuant to § 1983 if there is a failure to adequately train employees and that failure is the cause or the "moving force" behind the underlying constitutional deprivation. *See City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Myers,* 151 F.3d at 1317. A governmental entity "is only liable when it can be fairly said that the city itself is the wrongdoer." *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 122, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

 *Myers* illustrates this concept in the context of allegations of the use of excessive force by police officers in responding to a domestic violence incident. The *Myers* Court held:

> the plaintiffs' failure to train claims, like their basic excessive force claim against the individual officers, requires a predicate showing that the officers did in fact use excessive force....

*Myers,* 151 F.3d at 1317. *See also Trigalet v. City of Tulsa,* 239 F.3d 1150, 1156 (10th Cir.), *cert. denied,* — U.S. ——, 122 S.Ct. 40, 151 L.Ed.2d 13 (2001). It is only when the "execution of a government's policy or custom ... inflicts the injury" that the governmental entity or its policy makers may be held liable under § 1983. *Monell,* 436 U.S. at 694, 98 S.Ct. 2018.

#### a. Library Victims

 Here, Harris and Klebold were the "moving force" behind the Library Victims' injuries. Thus, Plaintiffs' allegations in Claims One and Two as to the Library Victims do not state viable claims for municipal liability against the Jefferson County Board of County Commissioners or the Jefferson County Sheriff's Department.

#### b. Daniel Rohrbough

Pursuant to *Myers,* the unidentified Law Enforcement Defendant alleged to have killed Daniel Rohrbough was the "moving force" behind the harm that befell Daniel Rohrbough. However, Plaintiffs have not stated a claim for an underlying constitutional violation as to Daniel Rohrbough.

Consequently, the Law Enforcement Defendants are entitled to dismissal of Claim Four in its entirety.

## V.

### Qualified Immunity Analysis

 As a matter of law, qualified immunity is not available as a defense to municipal liability. *See Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Plaintiffs have, not cleared the initial hurdle of asserting a claim for a constitutional violation in Claims Two or Three. Assuming a constitutional violation, I examine the qualified immunity issue to determine if this defense provides an additional reason for dismissal of Claims Two and Three.

 The question is whether the constitutional rights allegedly violated were clearly established as of April 20, 1999 so that reasonable police officers in the Law Enforcement Defendants' position facing analogous circumstances would have understood that their actions were in violation of those rights. *See Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 516 (10th Cir.1998).

### A. Claim Two

#### 1. Library Victims

##### a. State created/enhanced danger

Pursuant to the allegations in Claim Two, Plaintiffs must make a particularized

showing that the "contours" of the danger-creation jurisprudence were clearly established on April 20, 1999 within a sufficiently analogous factual setting so that the responding Law Enforcement Defendants had notice that their conduct violated the Library Victims' constitutional rights.

In *Schnurr,* I concluded that *Graham, Uhlrig, Armijo,* and *Sutton* provide reasoned support for the conclusion that the state created/enhanced danger theory does not fit the horrific and unprecedented circumstances facing the Law Enforcement Defendants on April 20, 1999. Therefore, assuming Claim Two asserts violations of substantive due process, qualified immunity would attach.

### b. Special Relationship

In *Schnurr, et al.,* I also concluded that the Library Plaintiffs were not, as a matter of law, in the custody of the Sheriff Defendants as contemplated by *DeShaney* and its progeny. For the reasons stated in *Schnurr,* even assuming Claim Two states a violation of substantive due process, qualified immunity necessarily attached in this case because the contours of the rights were blurred and indistinct as to the Library Victims.

### 2. Daniel Rohrbough

Pursuant to the allegations in Claim Two, Plaintiffs must make a particularized showing that the "contours" of the danger-creation jurisprudence were clearly established on April 20, 1999 within a sufficiently analogous factual setting so that the unidentified Law Enforcement Defendant alleged to have shot Daniel Rohrbough had notice that his conduct violated Daniel Rohrbough's constitutional rights.

As stated above, in *Schnurr,* I concluded that *Graham, Uhlrig, Armijo,* and *Sutton* provide reasoned support for the conclusion that the state created/enhanced danger theory does not fit the unprecedented

violent and explosive circumstances facing the Law Enforcement Defendants, including the unidentified Law Enforcement Defendant, on April 20, 1999. Therefore, assuming Claim Two asserts a violation of substantive due process, qualified immunity would attach.

### B. Claim Three

### 1. Supervisory Liability

 As set out in § V(C)(1), it has been the law of the Tenth Circuit since 1992 that supervisory liability under § 1983 requires "allegations of personal direction or actual knowledge and acquiescence" in conduct alleged to have violated the constitutional rights of a citizen. *See Woodward,* 977 F.2d at 1399 (§ 1983 claim against supervising police officers arising out of alleged sexual harassment claim). Thus, supervisory liability for personal direction or actual knowledge and acquiescence in conduct violating constitutional rights was clearly established in the abstract as of April 20, 1999. Plaintiffs allege that on April 20, 1999 the Law Enforcement Defendants, including the Command Personnel:

> observed and witnessed their colleagues' and subordinates' directives cutting off all avenues of aid, both self-help and aid from other would-be rescuers, to the Library victims and the deprivation of Danny Rohrbough's constitutional rights, yet failed to take any action to remedy or correct said deprivations of Constitutional rights taking place before them.

*See* C/O ¶ 118. However, the rights allegedly violated here are said to flow from *DeShaney's* state-created danger and special relationship exceptions to its firm general rule that the state has no duty to protect citizens from harm inflicted by third-parties. In the situation confronted by Sheriff Stone, immunity has attached

because the contours of the rights allegedly violated were not sufficiently clear.

### 2. Individual Liability

Research fails to reveal a published Tenth Circuit case addressing the duty of law enforcement officers to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. However, this duty has been recognized by other circuits. *See e.g. Anderson v. Branen,* 17 F.3d 552 (2nd Cir.1994); *Byrd v. Clark,* 783 F.2d 1002, 1007 (11th Cir.1986); *Webb v. Hiykel,* 713 F.2d 405, 408 (8th Cir.1983); *Bruner v. Dunaway,* 684 F.2d 422, 426 (6th Cir.1982), *cert. denied,* 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983); *Byrd v. Brishke,* 466 F.2d 6, 11 (7th Cir. 1972). Under the horrific and explosive circumstances facing the individual Law Enforcement Defendants, however, I conclude that qualified immunity attaches as to Claim Three.

Accordingly, IT IS ORDERED that:

1. Claim One against the Law Enforcement Defendants is DISMISSED;

2. Claim Two against the Law Enforcement Defendants is DISMISSED;

3. Claim Three against the Law Enforcement Defendants is DISMISSED; and

4. Claim Four against the Jefferson County Board of County Commissioners, and the Jefferson County Sheriff's Department is DISMISSED